STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. LOUIS STEWART, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted May 1, 1978—Decided September 18, 1978.

98

Before Judges FRITZ, BOTTER and ARD.

*Mr. Stanley C. Van Ness,* Public Defender, attorney for appellant (*Mr. Jeffrey S. Feldman,* designated counsel, of counsel; *Mr. Philip A. Ross,* on the brief).

*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney for respondent (*Mr. Kenneth Ply,* Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

BOTTER, J. A. D. Defendant was convicted of robbery (*N. J. S. A.* 2A:141-1) in a jury trial. In an earlier trial the jury could not agree upon a verdict. Defendant was sentenced to State Prison for a term of five to seven years.

On this appeal defendant contends: (a) the prosecutor's remarks in summation were prejudicial and the trial judge failed to deal properly with that conduct, and (b) the cross-examination of defendant on his prior convictions improperly exceeded the permissible use of the evidence. We agree with these contentions and reverse.

There was ample evidence tending to support defendant's conviction, but the transgressions of the prosecutor warrant our stern condemnation and the reversal of this conviction in an effort to stem prosecutorial misconduct. Improper conduct of prosecutors is becoming "much too prevalent." *State v. Farrell,* 61 *N. J.* 99, 104 (1972) ; *State v. Spano,* 64 *N. J.* 566, 568 (1974). It must be deterred. See *State v. DiPaglia,* 64 *N. J.* 288, 298 (1974) (Clifford, J., dissenting) ; *State v. Thornton,* 38 *N. J.* 380, 400 (1962), *cert.* den. 374 *U. S.* 816, 83 *S. Ct.* 1710, 10 *L. Ed.* 2d 1039 (1963).

There was evidence to show that a Carl Swanson was assaulted and robbed by two men near Bamberger's Department Store in Newark. When the two miscreants fled they were pursued by a motorist, Samuel Griffin, who captured defendant. The victim had also joined in the pursuit of his attackers. However, defendant's accomplice escaped. Defend-

ant struggled to escape until the police arrived and he gave a false name to the arresting officer, but a search failed to disclose any of the victim's property in defendant's possession.

Defendant testified in his own behalf. He claimed that he was sitting on a porch fixing a nail in his shoe when Griffin ran past him, ran up a stairway as if he were looking for someone, came back to defendant, looked at him, and then "grabbed" and "punched" him. A struggle ensued but defendant could not free himself from Griffin's grasp. The victim, Mr. Swanson, arrived and then the police. Defendant admitted giving the police a false name.

On cross-examination the prosecuting attorney referred to defendant's testimony that he was walking home because he didn't have carfare. He asked defendant if defendant robbed Mr. Swanson because he had no money and needed some "to make it through the next couple of days." Defendant resisted this charge by saying he had been working and was getting paid the next day, but the prosecutor pressed defendant about his lack of funds. We refer to this on our own motion because it is generally improper to use a defendant's poverty to establish a criminal motive. *State v. Mathis*, 47 *N. J.* 455, 469–472 (1966) ; *cf. State v. Copeland*, 94 *N. J. Super.* 196, 201–202 (App. Div. 1967). Moreover, this line of questioning relates to another impropriety to which defendant objected, namely, the prosecutor's reference to defendant's recent release from jail, thereby again suggesting that defendant committed the robbery because he was in need of funds or, at least, was a "bad man" with a penchant for crime.

The prosecuting attorney went on to cross-examine defendant about a prior conviction and 60-day jail sentence for larceny. This was admitted by defendant. The prosecutor then explored the dates when defendant was sent to jail and when he was released. This culminated in a final question by the prosecutor:

Q. As a matter of fact, sir, you were only out of jail a few days when you robbed Mr. Swanson. Isn't that right.
A. No.

■ Defense counsel rose to object. He said: "Judge—," but he was interrupted by the prosecutor's statement that he had no further questions. Defense counsel persisted, however, and moved for a mistrial based upon this improper use of a prior conviction. He correctly stated that, while prior convictions can be used to affect credibility, they cannot be used to unfairly insinuate that because defendant "had just been released from prison he was going to come out and commit a crime." The prosecutor replied with the pretense that he wanted to establish that defendant was not in jail when the crime was committed. But defendant made no such contention. Defendant had already testified on direct that he was at the scene on the night in question. *Cf. State v. Mathis, supra,* 47 *N. J.* at 470–471 where a prosecutor asserted a false basis to justify improper cross-examination.

The trial judge denied the mistrial on grounds that the objection was untimely and the material was not that "harmful" to defendant, that it was not "overwhelmingly prejudicial."

■ In this case defendants' prior convictions could be used only to affect his credibility as a witness. *N. J. S. A.* 2A:81–12; *State v. Thomas,* 76 *N. J.* 344, 361 (1978); see *State v. Sands,* 76 *N. J.* 127, 147 (1978), which applies a narrower rule prospectively. The attempt to use a prior conviction to establish the predilection or motive for committing other crimes is strongly condemned. *State v. Johnson,* 65 *N. J.* 388, 391–392 (1974), finding prejudice and reversing a conviction in part because a prosecutor harped on defendant's prior convictions to the point of suggesting that defendant was a hardened criminal and the jury might infer guilt from that fact.

■ In *State v. Thomas, supra,* the Supreme Court suggested that the misuse of a prior conviction might be unduly prejudicial despite a trial judge's curative charge. 76 *N. J.*

at 362–363. Here we note that no curative charge was given by the trial judge, despite defense counsel's objection and motion for a mistrial. These objections should have alerted the judge to the seriousness of the prosecutor's misconduct. Rather than dismiss the application on the technical basis that defendant answered "no" before his attorney's objection was asserted, the trial judge should have forcefully reprimanded the prosecutor for this improper interrogation and should have attempted to cure the wrong by a prompt charge to the jury. *State v. Farrell, supra,* 61 *N. J.* at 106; see *State v. DiPaglia,* 64 *N. J.* 288, 296 (1974). (We note that the judge's charge to the jury at the close of the case did include instructions on the limited use to which convictions may be put.) *State v. Sands, supra,* recognizes potential prejudice in the use of prior convictions. 76 *N. J.* at 144, 147. See also *State v. Manley,* 54 *N. J.* 259, 269–270 (1969), where the court also spoke of the need to instruct jurors that "their consideration of such conviction must be limited entirely to the issue of [defendant's] credibility * * *." 54 *N. J.* at 270; *State v. Johnson, supra,* 65 *N. J.* at 392, 395 (Pashman, J., concurring).

Defendant also complains of the prosecutor's remarks in summation. In summation the prosecutor referred to defendant as a "young punk." Defense counsel immediately objected, but was overruled. When he persisted in his objection the trial judge responded: "Sit down, Mr. G———. Let the Prosecutor finish." Despite protestations, the trial judge rebuked defense counsel for refusing to sit down and for talking back, for which defense counsel apologized, but the trial judge failed to take any action to discourage the prosecutor's improper conduct. See *State v. Cappadona,* 127 *N. J. Super.* 555, 559 (App. Div. 1974), certif. den., 65 *N. J.* 574 (1974), *cert.* den. 419 *U. S.* 1034, 95 *S. Ct.* 518, 42 *L. Ed.* 2d 310 (1974), where the trial judge instructed the jury to disregard the prosecutor's reference to defendants as "bums." For these reasons defendant contends that the trial judge failed to take proper corrective action and dis-

played hostility toward defense counsel in the presence of the jury.

We do not condone defense counsel's refusal to sit down after his objection was overruled and the trial judge sought to terminate his protests. When an attorney provokes a judge's rebuke by defying his authority to limit argument, he cannot complain of the judge's appearance of hostility while trying to control the proceedings. Nevertheless, the prosecutor's reference to defendant as a "punk" was improper and the trial judge should have taken corrective action. See *State v. Von Atzinger*, 81 *N. J. Super.* 509, 516 (App. Div. 1963) where references to defendant in the prosecutor's summation as a "punk," "hood," and "bum" were considered so prejudicial as to constitute plain error.

Possibly encouraged by this success in summation, the prosecutor went on to refer to defendant's accomplice and said :

\* \* \* I'm sorry that we don't have the other man here. I'm sorry we don't have the taller guy with the blue jacket. I'd like to see him convicted. \* \* \*

No objection was made, but defendant now contends this was an improper injection of the prosecutor's personal belief in the guilt of defendant and his accomplice. See *State v. Farrell, supra,* 61 *N. J.* at 106. However, we do not regard this comment as plain error. See *State v. Thornton,* 38 *N. J.* 380, 398 (1964), *cert.* den. 374 *U. S.* 816, 83 *S. Ct.* 1710, 10 *L. Ed.* 2d 1039 (1963).

The prosecutor concluded his remarks with his rather narrow view of the meaning of a fair trial. He said that when a defendant has his "day in court," can cross-examine witnesses and is judged by a jury, "that's what we call a fair trial." He went on to say that defendant did have a fair trial and that their verdict would be fair because defendant had his day in court, "But a fair trial does not mean a not guilty verdict." He told the jurors they had to make defendant pay for his crime, "because it's your sworn moral obligation." This last comment raised another objection. The colloquy was as follows:

MR. G————: Judge, it's not the sworn obligation to convict anyone.

THE COURT: To do their duty.

MR. G————: He didn't say that.

THE COURT: Based on the evidence.

MR. G————: If he said that I would have no objection.

THE COURT: All right. Based on the evidence. All right.

MR. G————: You don't have to cover for his errors, judge.

THE COURT: Now listen, Mr. G————, I'll take nothing from you on that.

MR. G————: Judge, that's exactly—

THE COURT: Don't you say I'm covering for his errors. Now, stop talking. I'm going to charge the jury.

 Telling jurors that their sworn obligation is to convict or that they would not have met their "responsibility" unless they convicted is disapproved. *State v. Knight*, 63 N. J. 187, 193 (1973); *State v. Johnson*, 31 N. J. 489, 512–513 (1960). Here, however, the trial judge denigrated defense counsel's reasonable complaint and glossed over the prosecutor's statement without any attempt to clarify the point for the jury.

 We are satisfied that the prosecutor's series of improprieties, some of which were given apparent approval by the trial judge, combined to deprive defendant of a fair trial. See *State v. Orecchio*, 16 N. J. 125, 129 (1954). We cannot condone these prosecutorial tactics. Unfortunately they were given added support by the trial judge's failure to sustain appropriate objections, to give prompt curative instructions, and to rule forcefully enough to discourage such conduct. As the court said in *State v. Thornton, supra*:

> Supervision and control of all trials are in the hands of the judge. It is essential to the administration of justice that he be acutely responsive to the task. In criminal proceedings particularly, where a person's life or liberty is at stake, whenever a prosecutor exceeds the bounds of propriety or fair play in his summation, the trial court should intervene decisively whether or not an objection is made by the defendant. [38 N. J. at 400].

Accordingly, we reverse and set aside the conviction. We remand the case to the trial court for a new trial.